## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 2018-CV-02243-LTB

WILLIAM NORRIS,

     Plaintiff,

v.

UNIVERSITY OF COLORADO, BOULDER
(through its Board, the Regents of the University
of Colorado, a body corporate), and PHILIP P.
DISTEFANO,

     Defendants.

---

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

Defendants University of Colorado, through its Board, the Regents of the University of Colorado; and Philip DiStefano, Chancellor for the University of Colorado Boulder, (collectively the "University"), submit their Answer to Plaintiff's Complaint and Jury Demand (ECF No. 1):

## THE NATURE OF THE ACTION

1.   The University admits that its Office of Institutional Equity and Compliance (OIEC) investigated Plaintiff after another student, referred to here by the pseudonym Jane Roe, accused Plaintiff of sexual misconduct.  The University denies the remaining allegations in Paragraph 1 of the Complaint.

2.   The University admits that it suspended Plaintiff for eighteen months after it found him responsible for sexual misconduct and admits that he lacks the final six credits for a bachelor's degree from the University.  The University denies that its action

was without sufficient supporting evidence.  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 2 of the Complaint, and so denies them.

3.   The University lacks knowledge or information sufficient to form a belief as to allegations relating to the alleged negligence of the Boulder Police Department (BPD) investigation, and so denies them.  The University admits that its investigators' report included information obtained during BPD interviews.  The University denies the remaining allegations in Paragraph 3 of the Complaint.

4.   The University denies the allegations in Paragraph 4 of the Complaint.

5.   The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 5 of the Complaint, and so denies them.

6.   The University admits that Plaintiff has not received his bachelor's degree from the University, admits that it assigned two investigators to investigate the allegations in sexual misconduct against Plaintiff, and admits that the Title IX coordinator issued Plaintiff's sanction.  The University denies the remaining allegations in Paragraph 6 of the Complaint.

7.   The University admits that it applied the preponderance of the evidence standard in its investigation of sexual misconduct allegations including those concerning Plaintiff, and denies the remaining allegations in the first sentence of Paragraph 7 of the Complaint.  The University lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 7 of the Complaint, and so denies them.

8.   The University denies the allegations in Paragraph 8 of the Complaint.

9.  The University denies that its imposition of a sanction was unwarranted and erroneous.  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 9 of the Complaint, and so denies them.

10.  The University denies the allegations in Paragraph 10 of the Complaint.

11.  The University denies the allegations in Paragraph 11 of the Complaint.

12.  The University admits that the Complaint as filed contains the claims identified in Paragraph 12 of the Complaint.

## THE PARTIES

13.  Upon information and belief, the University admits the allegations in Paragraph 13 of the Complaint.

14.  The University admits the allegations in Paragraph 14 of the Complaint.

15.  The University admits the allegations in the first and third sentences in Paragraph 15 of the Complaint, and that Chancellor DiStefano hired Ms. Simons.  The University denies the remaining allegations in Paragraph 15 of the Complaint.

## JURISDICTION AND VENUE

16.  The University admits that jurisdiction is proper in this Court.

17.  The University admits that the Court has jurisdiction over Defendant CU Boulder.

18.  The University admits that the Court has jurisdiction over Defendant Chancellor DiStefano.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

19. The University admits the allegations in Paragraph 19 of the Complaint.

20. The University admits that the Department of Education responded in part to the special investigative report published by NPR. The University denies the remaining allegations in Paragraph 20 of the Complaint.

21. The University admits that the DCL cited the statistic that "about 1 in 5 women are victims of completed or attempted sexual assault while in college." The University denies the remaining allegations in Paragraph 21 of the Complaint.

22. The University admits that a female student filed a complaint with the Office of Civil Rights (OCR), that it was investigated, and the investigation was closed in September 2017.  The University denies that it mishandles complaints of sexual assault, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 22 of the Complaint, and so denies them.

23. The University admits that OCR issued a document tiled *Questions and Answers on Tile IX and Sexual Violence ("Q&A")* on April 29, 2014.  The University denies the remaining allegations in Paragraph 23 of the Complaint.

24. The University lacks knowledge or information sufficient to form a belief about the truth of allegations in the first sentence of Paragraph 24 of the Complaint, and so denies them.  The University denies the last sentence in Paragraph 24 of the Complaint, and admits the remaining allegations in Paragraph 24 of the Complaint.

25. The University admits the allegations in Paragraph 25 of the Complaint.

26. The University admits the allegations in Paragraph 26 of the Complaint.

27. The University admits the allegations in Paragraph 27 of the Complaint.

28. The University admits the allegations in Paragraph 28 of the Complaint.

29. The University admits the allegation in Paragraph 29 of the Complaint.

30.   The University admits the allegations in Paragraph 30 of the Complaint.

31.   The University admits the allegations in Paragraph 31 of the Complaint.

32.   The University admits that its OIEC staff has attended training that included "trauma informed interviewing," including in the Fall of 2014.  The University denies the remaining allegations in Paragraph 32 of the Complaint.

33.   The University admits the allegations in Paragraph 33 of the Complaint.

34.   The University admits the allegations in the first sentence of Paragraph 34 of the Complaint.  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 34 of the Complaint, and so denies them.

35.   The University admits that in February 2016, the *CU Independent* published an opinion piece that included the language quoted in Paragraph 35 of the Complaint.  The University denies the remaining allegations in Paragraph 35 of the Complaint.

36.   The University admits the first and third sentences of Paragraph 36 of the Complaint. The University admits that Chancellor DiStefano and Ms. Simons appeared in an "It's On Us" video.  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 36 of the Complaint, and so denies them.

37.   The University admits the second sentence of Paragraph 37 of the Complaint. The University denies the third sentence of Paragraph 37 of the Complaint.  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 37 of the Complaint, and so denies them.

38.   The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 38 of the Complaint, and so denies them.

39.  The University admits that Plaintiff majored in mechanical engineering and was in good standing with no prior disciplinary record.  The University lacks knowledge or information sufficient to form a belief as to the allegations related to Plaintiff's participation in the ROTC program, and so denies them.  The University denies the remaining allegations in Paragraph 39 of the Complaint.

40.  The University admits that the 2013-2014 Student Conduct Code set forth the prohibited conduct for that school year and admits that the Code is available online.  The University admits that the 2013-2014 Code's substantive policies prohibited Plaintiff's sexual misconduct in Spring 2014.  The University denies that the 2013-2014 Code's procedures governed the 2016 OIEC investigation into Plaintiff's misconduct, and denies the remaining allegations in Paragraph 40 of the Complaint.

41.  The University admits that the 2013-2014 Student Conduct Code Appendix 1, § A.2 contains the language quoted in Paragraph 41 of the Complaint.

42.  The University admits that the 2013-2014 Student Conduct Code Appendix 1, §§ B and B.4 contains the language quoted in Paragraph 42 of the Complaint.

43.  The University admits that the 2013-2014 Student Conduct Code Appendix 1, § D.2 contains the language quoted in Paragraph 43 of the Complaint.

44.  The University admits that the 2013-2014 Student Conduct Code § H.4 sets forth a "preponderance of the evidence" standard.

45.  The University admits that the 2013-2014 Student Conduct Code Appendix 1, § D.12 states "[a]ny student who provides false information to any university official during the conduct process may be charged with violating" the Code.

46.  The University admits that the 2013-2014 Student Conduct Code § K.2 permitted students to appeal "if the sanctions of termination, suspension, or expulsion were imposed" and admits that the appeals were reviewed by a Student Conduct Appeal Committee with authority to "[r]educe or increase the sanction."  The University denies that the Student Conduct Appeal Committee had "broad authority to reverse the University's finding."

47.  The University admits that OIEC was created in 2014 to address complaints of discrimination and harassment on the CU Boulder campus using the methods generally described in the OIEC's Process and Procedures.  The University admits that the 2015-2016 OIEC Process and Procedures were the procedures in place during the investigation into Plaintiff's misconduct.  The University denies that the 2015-2016 Process and Procedures were wrongfully applied.  The University further Answers:

i.    The University admits that the 2015-2016 OIEC Process and Procedures § C.1 contains the language quoted at Paragraph 47.i of the Complaint.

ii.   The University admits that the 2015-2016 OIEC Process and Procedures § C.2 contains the language quoted at Paragraph 47.ii.

iii.  The University admits that the language quoted from 2015-2016 OIEC Process and Procedures § D.1 at Paragraph 47.iii is accurate, but incomplete.

iv.   The University admits that the 2015-2016 OIEC Process and Procedures § H contains the language quoted at Paragraph 47.iv of the Complaint.

v. The University admits that the language quoted from 2015-2016 OIEC Process and Procedures § H.1 at Paragraph 47.v is accurate, but incomplete.

vi. The University admits that the 2015-2016 OIEC Process and Procedures § H.2 provides that "[w]here there is a sufficient factual basis to impose remedial and/or protective measures, they will not disproportionately impact the complainant."

vii. The University admits that the 2015-2016 OIEC Process and Procedures § H.4 contains the language quoted at Paragraph 47.vii of the Complaint.

viii. The University admits that the 2015-2016 OIEC Process and Procedures § H.6.a.i contains the language quoted at Paragraph 47.viii of the Complaint.

ix. The University admits that the language quoted from the 2015-2016 OIEC Process and Procedures § H.6.a.i at Paragraph 47.ix is accurate, but incomplete.

x. The University admits that the language quoted from the 2015-2016 OIEC Process and Procedures § H.6.a.ii at Paragraph 47.x is accurate, but incomplete. The University denies the second sentence of Paragraph 47.x of the Complaint.

xi. The University admits that the 2015-2016 OIEC Process and Procedures § H.6.a.vii contains the language quoted at Paragraph 47.xi of the Complaint.

xii.   The University denies the allegations in the first sentence of Paragraph 47.xii of the Complaint.  The University admits that the 2013-2014 and 2015-2016 Student Conduct Code allowed respondents to submit questions to the conduct officer to be asked of witnesses, subject to some parameters.

xiii.   The University admits that the 2015-2016 OIEC Process and Procedures § H.6.a and § H.6.c contains the language quoted at Paragraph 47.xiii of the Complaint.

xiv.   The University admits that the 2015-2016 OIEC Process and Procedures § H.6.a.v contains the language quoted at Paragraph 47.xiv of the Complaint and admits that the Standing Review Committee does not conduct its own investigation or hearing.  The University denies the characterization that respondent students are provided "no information" about the Standing Review Committee.

xv.   The University admits that the language quoted from the 2015-2016 OIEC Process and Procedures § H.6.a.vi at Paragraph 47.xv of the Complaint is accurate, but incomplete.

xvi.   The University admits that the 2015-2016 OIEC Process and Procedures § H.6.f contains the language quoted at Paragraph 47.xvi of the Complaint.

xvii.   The University admits that the 2015-2016 OIEC Process and Procedures § H.6.h contains the language quoted at Paragraph 47.xvii of the Complaint.

    xviii.    The University admits that the 2015-2016 OIEC Process and Procedures § H.8 contains the language quoted at Paragraph 47.xviii of the Complaint.

48. The University denies the allegations in Paragraph 48 of the Complaint.  The University further Answers:

    i.    The University admits that the 2015-2016 OIEC Process and Procedures provided for the Title IX Coordinator to also act as the Executive Director of OIEC.  The University denies that the Title IX coordinator is currently the OIEC director.

    ii.    The University admits that the 2015-2016 OIEC Process and Procedures § I.a contains the language quoted in Paragraph 48.ii of the Complaint.

    iii.    The University admits that the 2015-2016 OIEC Process and Procedures § I.b contains the language quoted in Paragraph 48.iii of the Complaint.

    iv.    The University admits that the 2015-2016 OIEC Process and Procedures § I.g contains the language quoted in Paragraph 48.iv of the Complaint.

    v.    The University admits that the 2015-2016 OIEC Process and Procedures § I.i contains the language quoted in Paragraph 48.v of the Complaint.

    vi.    The University admits that the 2015-2016 OIEC Process and Procedures § I.j contains the language quoted in Paragraph 48.vi of the Complaint.

49. The University admits the allegations in Paragraph 49 of the Complaint.

50. The University admits the allegations in Paragraph 50 of the Complaint.

51. The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 51 of the Complaint, and so denies them.

52.   The University admits that "during the Spring 2014 semester," after Plaintiff and Jane Roe had been "drinking a fair amount," "Plaintiff and Jane Roe began kissing," "moved to his bed," that "Plaintiff pinned Jane Roe's arms over her head," and that "Plaintiff moved his hand down Jane Roe's body towards her genitals."  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 52 of the Complaint, and so denies them.

53.   The University admits that Plaintiff and Jane Roe had a "close friendship prior to July 2015", and that they "had engaged in consensual kissing over the course of their friendship." The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 53 of the Complaint, and so denies them.

54.   The University admits that Plaintiff engaged in sexual intercourse with Jane Roe in July 2015. The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 54 of the Complaint, and so denies them.

55.   The University admits that Jane Roe's and Plaintiff's friendship ended after the July 2015 incident. The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 55 of the Complaint, and so denies them.

56.   The University admits that Jane Roe and Plaintiff met on January 18, 2016, where she informed Plaintiff, "You know you raped me, right?" and he replied, "I hate that you call it that, but yes." The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 56 of the Complaint, and so denies them.

57.  Upon information and belief, the University admits the allegations in Paragraph 57 of the Complaint.  The University lacks knowledge or information sufficient to form a belief as to the footnote of Paragraph 57 of the Complaint, and so denies them.

58.  The University admits the allegations in Paragraph 58 of the Complaint.

59.  The University admits the first sentence of Paragraph 59 of the Complaint.  The University denies the second sentence of Paragraph 59 of the Complaint.  The University admits that Ms. Hasslbacher had communications with CU Boulder's Office of Victim Assistance.  The University lacks knowledge or information sufficient to form a belief as to whether Ms. Hasselbacher has a background in women's studies or as an advocate for women who have experienced domestic violence and sexual assault, and so denies them.  The University admits that Ms. Hasselbacher was a lawyer at an employment and civil rights law firm prior to joining CU Boulder.  The University denies the remaining allegations in Paragraph 59 of the Complaint.

60.  The University admits the first sentence of Paragraph 60 of the Complaint.  The University denies the remaining allegations in Paragraph 60 of the Complaint.

61.  The University admits the allegations in Paragraph 61 of the Complaint.

62.  The University admits that on January 21, 2016, Ms. Walker emailed Jane Roe, but denies that the language quoted in the first sentence of Paragraph 62 of the Amended Complaint is a verbatim quote.  The University admits that the email further informed Jane Roe, "it is your decision as to whether you want to participate in one process, both processes, or neither" and that the email contained options for "advocacy and support."  The University denies the remaining allegations in Paragraph 62 of the Complaint.

63.  The University admits the allegations in the first and second sentences of Paragraph 63 of the Complaint, that Ms. Hasselbacher and Ms. Walker confirmed they would both attend the interview, and that Detective Beckjord closed an email with "look forward to working with you."  The University denies the remaining allegations in Paragraph 63 of the Complaint.

64.  The University admits that on or about January 26, 2016, Detective Beckjord requested that OIEC "hold off on contacting Norris" and that on January 27, 2016, the University informed Detective Beckjord that they could reasonably hold off on issuing a Notice of Investigation until BPD had made contact.  The University denies the remaining allegations in Paragraph 64 of the Complaint.

65.  The University admits the allegations in Paragraph 65 of the Complaint.

66.  The University admits that BPD interviewed Plaintiff on January 28, 2016, and admits that Ms. Hasselbacher or Ms. Walker did not observe the interview at that time. The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 66 of the Complaint, and so denies them.

67.  The University admits the allegations in Paragraph 67 of the Complaint.

68.  The University admits the allegations in Paragraph 68 of the Complaint.

69.  The University admits the allegations in the first sentence of Paragraph 69 of the Complaint.  The University lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 69 of the Complaint, and so denies them.

70.  The University admits the first sentence of Paragraph 70 and admits that Jane Roe was informed "there are no time limits" on her decision to participate and that "it is

your decision as to whether you want to participate in one process, both processes, or neither." The University admits that the Notice provided that "if [Plaintiff] wished to address these charges," it asked him to contact Ms. Walker or Ms. Hasselbacher by February 1, 2016, to schedule a meeting, and that the Notice provided he may wish to consult with an advisor. The University denies the remaining allegations in Paragraph 70 of the Complaint.

71. The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 71 of the Complaint, and so denies them.

72. The University admits the allegations in Paragraph 72 of the Complaint.

73. The University admits the allegations in Paragraph 73 of the Complaint.

74. The University admits the first and second sentence of Paragraph 74 of the Complaint. The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 74 of the Complaint, and so denies them.

75. The University admits the allegations in Paragraph 75 of the Complaint.

76. The University admits the first sentence of Paragraph 76 of the Complaint. The University denies the remaining allegations in Paragraph 76 of the Complaint.

77. The University admits that on February 23, 2016, Plaintiff requested access to the investigative file before preliminary findings were made. The University admits the remaining allegations in Paragraph 77 of the Complaint.

78. The University admits the allegations in Paragraph 78 of the Complaint.

79. The University admits the allegations in Paragraph 79 of the Complaint.

80. The University admits the allegations in Paragraph 80 of the Complaint.

81. The University admits the allegations in Paragraph 81 of the Complaint.

82.  The University admits that on March 21, 2016, Ms. Hasselbacher emailed Plaintiff to notify him that he could review the file on March 28, 2016, that they "usually allow two hours for file review," and that they would "like to ask [him] some follow-up questions."  The University admits that Ms. Hasselbacher informed him that they would be drafting the Written Evidence Summary and that "[t]here is a possibility the WES will be issued before next week."  The University denies the remaining allegations in Paragraph 82 of the Complaint.

83.  The University admits that on March 22, 2016, Plaintiff emailed the investigators to inform them that he believed that the process was unbalanced and unfair, particularly as it relates to the timing of the WES.  The University lacks knowledge or information sufficient or knowledge to form a belief as to the remaining allegations in Paragraph 83 of the Complaint, and so denies them.

84.  The University admits the allegations in Paragraph 84 of the Complaint.

85.  The University admits that on March 28, 2016, Plaintiff's counsel requested a "one week adjournment" of time to review the file.  The University denies the remaining allegations in Paragraph 85 of the Complaint.

86.  The University admits that the Written Evidence Summary was provided to Plaintiff on April 1, 2016, prior to his review of the investigation file, and admits that Plaintiff had seven days to review and respond to it. The University denies the remaining allegations in Paragraph 86 of the Complaint.

87.  The University admits that the Written Evidence Summary was emailed to Jane Roe on April 1, 2016.  The University admits that the email informed Roe "[y]ou may discuss and review this document with advisers of your choosing, including an

advocate.  However, it is not appropriate, and could be construed as retaliatory, to discuss the document with any witnesses or anyone who participated in our investigation."  The University denies the remaining allegations in Paragraph 87 of the Complaint.

88.  The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 88 of the Complaint, and so denies them.

89.  The University admits the allegations in the first and second sentences of Paragraph 89 of the Complaint.  The University denies the remaining allegations in Paragraph 89 of the Complaint.

90.  The University denies that it prevented Plaintiff from discussing the file contents with his attorney and that it limited him to one two-hour session.  The University admits the remaining allegations in Paragraph 90 of the Complaint.

91.  The University lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 91 of the Complaint, and so denies them.

92.  The University denies the allegations in Paragraph 92 of the Complaint.

93.  The University admits the first sentence of Paragraph 93 of the Complaint.  The University denies the remaining allegations in Paragraph 93 of the Complaint.

94.  The University admits that Plaintiff's counsel objected to the Amended WES on May 3, 2016.  The University denies the remaining allegations in Paragraph 94 of the Complaint.

95.  The University admits that on May 6, 2016, Plaintiff and his counsel reviewed the OIEC investigative file for two hours and that an OIEC administrator was present. The University denies the remaining allegations in Paragraph 95 of the Complaint.

96.  The University lacks knowledge or information sufficient or knowledge to form a belief as to the remaining allegations in Paragraph 96 of the Complaint, and so denies them.

97.  The University admits the allegations in the first and second sentences of Paragraph 97 except that the University denies its review was "purported."   The University denies the remaining allegations in Paragraph 97 of the Complaint.

98.  The University denies the allegations in Paragraph 98 of the Complaint.

99.  The University admits that the June 14, 2016 Confidential Final Report concluded that Plaintiff subjected Jane Roe to non-consensual sexual contact.  The University admits that the June 14, 2016 Confidential Final Report contains the language quoted.  The University denies the remaining allegations in Paragraph 99 of the Complaint.

100. The University denies the allegations in Paragraph 100 of the Complaint.

101.  The University denies the allegations in Paragraph 101 of the Complaint.

102.   The University denies the allegations in Paragraph 102 of the Complaint.

103.   As to the allegations in Paragraph 103 of the Complaint, the Plaintiff's allegations state that the information contained in the romanettes were "per the evidence cited in the Confidential Final Report, Jane Roe made inconsistent statements about", and the University responds as follows:

     i.  The University denies that this alleged inconsistency is in the Confidential Final Report. The University further denies that these perceived inconsistencies are materially relevant to the overall findings within the OIEC report.

ii.  The University admits that in the January BPD interview Jane Roe does
     not reference whether she and Plaintiff engaged in a conversation prior to
     the incident, but that she does reference a heart-to-heart conversation in
     the March BPD interview. The University denies that these perceived
     inconsistencies are materially relevant to the overall findings within the
     OIEC report.

iii. The University admits that the Final Confidential Report does not
     reference the state of undress during the January BPD interview, but that
     in the March BPD interview it references that Jane Roe's shirt was off. The
     University further denies that these perceived inconsistencies are
     materially relevant to the overall findings within the OIEC report.

iv.  The University admits that the information referenced in the first three
     sentences of this paragraph are in the Final Confidential Report. The
     University denies that the remaining sentences of this paragraph are
     contained within the Final Confidential Report. The University further
     denies that these perceived inconsistencies are materially relevant to the
     overall findings within the OIEC report.

v.   The University admits that the information referenced in the first paragraph
     in 103(v) is contained within the Final Confidential Report. The University
     denies the first and last sentences of the second paragraph in 103(v), and
     admits that the information referenced in the remaining sentences of the
     second paragraph in 103(v) are contained within the Final Confidential

Report. The University further denies that these perceived inconsistencies are materially relevant to the overall findings within the OIEC report.

vi.   The University admits that the Final Confidential Report has inconsistent statements about whether Jane Roe spoke with Plaintiff about the Spring 2014 incident. The University further denies that these perceived inconsistencies are materially relevant to the overall findings within the OIEC report.

vii.   As to the first paragraph in 103(vii), the University admits that the information of the first sentence is contained in the Final Confidential Report. The University denies that the remaining sentences of the first paragraph are contained within the Final Confidential Report. The University admits that the OIEC did not interview "JG". As to the second paragraph in 103(vii), the University admits that the information of the second sentence is contained within the Final Confidential Report, but denies that the information in the remaining sentences of the second paragraph are contained within the Final Confidential Report. The University further denies that these perceived inconsistencies are materially relevant to the overall findings within the OIEC report.

104.   The University admits that there were some discrepancies in what witnesses told Ms. Hasselbacher and Ms. Walker.  The University denies the remaining allegations in Paragraph 104 of the Complaint.

105.     The University admits that the investigators concluded Plaintiff's inconsistent statements undermined his credibility.  The University denies the remaining allegations in Paragraph 105 of the Complaint.

106.     The University admits the allegations in Paragraph 106.

107.     The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 107 of the Complaint, and so denies them.

108.     The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 108 of the Complaint, and so denies them.

109.     The University lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 109 of the Complaint, and so denies them.  The University denies the remaining allegations in Paragraph 109 of the Complaint.

110.     The University admits that Plaintiff had contact with BPD before receiving the Notice of Investigation and that the Notice included date references and descriptions of the alleged occurrences.  The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 110 of the Complaint, and so denies them.

111.     The University admits that the OIEC report includes the language quoted in Paragraph 111 of the Complaint. The University lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 111 of the Complaint, and so denies them.

112.     The University denies the allegations in Paragraph 112 of the Complaint.

113.     The University denies the allegations in Paragraph 113 of the Complaint.

114.    The University denies the allegations in Paragraph 114 of the Complaint.

115.    The University denies the allegations in Paragraph 115 of the Complaint.

116.    The University denies the allegations in Paragraph 116 of the Complaint.

117.    The University denies the allegations in Paragraph 117 of the Complaint.

118.    The University denies the allegations in Paragraph 118 of the Complaint.

119.    The University admits that it issued Plaintiff a Notice of Finding, that the Notice of Finding contains the quoted language, that it included a typographical error (corrected in an amended notice) referencing the incorrect Code, and that it found Plaintiff responsible for nonconsensual sexual contact.  The University denies the remaining allegations in Paragraph 119 of the Complaint.

120.    The University admits the allegations in Paragraph 120 of the Complaint.

121.    The University admits that Ms. Simons emailed Plaintiff a Notice of Sanction on June 30, 2016, that included a typographical error (corrected in an amended notice).  The University denies the remaining allegations in Paragraph 121 of the Complaint.

122.    The University admits the allegations in Paragraph 122 of the Complaint.

123.    The University denies the first sentence of Paragraph 123 of the Complaint.  The University admits that Ms. Simons' responsibilities include Title IX compliance and compiling statistics for sexual misconduct complaints, including examples of the sanctions issued.  The University admits that Ms. Simons communicated with OCR during its investigation of the University.  The University lacks knowledge or information sufficient to form a belief as to whether Ms. Simons was a "public voice against sexual assault," and so denies those allegations, and denies that

Chancellor DiStefano "handpicked" her in response to the OCR investigation.  The University admits that Ms. Simons participated in the "It's On Us" video around the time of President Biden's visit, which was during the time in which Jane Roe's complaint was investigated.  The University denies that Ms. Simons had a conflict of interest that should have precluded her from determining the sanction in Plaintiff's or other sexual misconduct cases, denies that Ms. Simons' responsibilities gave rise to a potential for bias, and denies the remaining allegations in Paragraph 123 of the Complaint.

124.     The University the allegations in the first sentence of Paragraph 124 of the Complaint.  The University denies the remaining allegations in Paragraph 124 of the Complaint.

125.     The University admits the second sentence of Paragraph 125 of the Complaint and denies the remaining allegations in Paragraph 125 of the Complaint.

126.     The University admits that Plaintiff was suspended from campus from June 30, 2016 through December 21, 2017, and that he was ordered to undergo a sexual behavior assessment, to comply with any court sanctions, to meet with the Title IX coordinator should he desire to return to the University after his suspension, and to have no contact with Jane Roe.  The University denies the remaining allegations in Paragraph 126 of the Complaint.

127.     The University admits the first sentence of Paragraph 127 of the Complaint.  The University denies the second sentence of Paragraph 127 of the Complaint.

128.     The University admits the allegations in Paragraph 128 of the Complaint.

129.     The University admits the allegations in the first sentence of Paragraph 129 of the Complaint.  The University admits that Simons further stated that she opened up a preliminary inquiry into Plaintiff's "rationale for appeal" concerning gender bias.  The University denies the remaining allegations in Paragraph 129 of the Complaint.

130.     The University denies the allegations in Paragraph 130 of the Complaint.

131.     The University denies the allegations in Paragraph 131 of the Complaint.

132.     The University admits that Ms. Simons issued the sanction and conducted an administrative review.  The University admits that three people investigated and sanctioned Plaintiff concerning the Spring 2014 allegation.  The University denies the remaining allegations in Paragraph 132 of the Complaint.

133.     The University admits that Ms. Simons declined to alter the finding or sanction after conducting her administrative review.  The University denies the remaining allegations in Paragraph 133 of the Complaint.

134.     The University denies the allegations in Paragraph 134 of the Complaint.

135.     The University denies the allegations in Paragraph 135 of the Complaint.

136.     The University denies the allegations in Paragraph 136 of the Complaint.

137.     The University denies the allegations in Paragraph 137 of the Complaint.

138.     The University denies the allegations in Paragraph 138 of the Complaint.

139.     The University denies the allegations in Paragraph 139 of the Complaint.

140.     The University lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 140 of the Complaint, and so denies them.

## COUNT I

**Violation of Title IX of the Education Amendments of 1972**
**(Against CU Boulder)**

141.      The University restates its responses to each allegation as if fully set forth herein.

142.      The University admits the allegations in Paragraph 142 of the Complaint.

143.      The University admits the allegations in Paragraph 143 of the Complaint.

144.      The University admits the allegations in the first and second sentences of Paragraph 144 of the Complaint.  The University lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 144 of the Complaint, and so denies them.

145.      The University admits that the 2001 guidance states, in part: "The Constitution also guarantees due process to students in public and State-supported schools who are accused of certain types of infractions."  The Dear Colleague letter states, in part: "Public and state-supported schools must provide due process to the alleged perpetrator."  The University denies the remaining allegations in Paragraph 145 of the Complaint.

146.      The University admits the first sentence of Paragraph 146 of the Complaint.  The University lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 146 of the Complaint, and so denies them.

147.      The University admits that OCR has identified a number of elements in evaluating whether a school's grievance procedures are prompt and equitable, including the language quoted in Paragraph 147 of the Complaint.

148.      The University admits that the Dear Colleague Letter states: "The Title IX coordinators should not have other job responsibilities that may create a conflict of

interest. For example, serving as the Title IX coordinator and a disciplinary hearing board member or general counsel may create a conflict of interest."

149.    The University admits that some courts have found that Title IX may be violated as articulated in Paragraph 149 of the Complaint, but denies that Title IX itself so provides.

150.    The University denies the allegations in Paragraph 150 of the Complaint.

151.    The University denies the allegations in Paragraph 151 of the Complaint.

152.    The University denies the allegations in Paragraph 152 of the Complaint.

153.    The University lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 153 of the Complaint, and so denies them.

154.    The University denies the allegations in Paragraph 154 of the Complaint.

155.    The University denies the allegations in Paragraph 155 of the Complaint.

156.    The University denies the allegations in Paragraph 156 of the Complaint.

157.    The University denies the allegations in Paragraph 157 of the Complaint.

158.    The University denies the allegations in Paragraph 158 of the Complaint.

159.    The University denies the allegations in Paragraph 159 of the Complaint.

160.    The University denies the allegations in Paragraph 160 of the Complaint.

161.    The University denies the allegations in Paragraph 161 of the Complaint.

162.    The University denies the allegations in Paragraph 162 of the Complaint.

## COUNT II

### 42 U.S.C. § 1983:  Denial of Fourteenth Amendment Due Process
### (Against DiStefano)

163.    The University restates its responses as if fully set forth herein.

164.     The University admits the allegations in Paragraph 164 of the Complaint.

165.     The University admits that the Chancellor's signature, with others, appear on diplomas from the CU Boulder campus.  The University denies the remaining allegations of Paragraph 165 of the Complaint.

166.     The University denies the allegations in Paragraph 166 of the Complaint.

167.     The University admits that Chancellor DiStefano hired Ms. Simons and that she reported directly to him for some time, and that she reported statistics on sanctions issued for sexual misconduct violations at CU Boulder.  The University lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 167 of the Complaint, and so denies them.

168.     The University admits the first sentence of Paragraph 168 of the Complaint.  The University admits that the Fifth Amendment to the U.S. Constitution also concerns due process, but denies that it provides a direct cause of action against the state.

169.     The University admits that 42 U.S.C. section 1983 includes the language quoted in Paragraph 169 of the Complaint.

170.     The University lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 170 of the Complaint, and so denies them.

171.     The University denies the allegations in Paragraph 171 of the Complaint.

172.     The University denies the allegations in Paragraph 172 of the Complaint.

173.     The University lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 173 of the Complaint, and so denies them.

174.     The University admits that, under the Colorado Constitution and Title 23, Article 20 of the Colorado Revised Statutes, the University is a state institution of higher education and that the University admits that its Boulder campus is part of the University of Colorado system.  The University denies second sentence of Paragraph 174 of the Complaint.

175.     The University denies the allegations in Paragraph 175 of the Complaint.

176.     The University admits that Plaintiff is entitled to due process, and that due process takes into account the potential discipline.  The University denies the remaining allegations in Paragraph 176 of the Complaint.

177.     [The Complaint does not include Paragraph 177.]

178.     The University denies the allegations in Paragraph 178 of the Complaint.

179.     The University denies the allegations in Paragraph 179 of the Complaint.

180.     The University denies the allegations in Paragraph 180 of the Complaint.

181.     The University admits that it was under OCR investigation at the time of the investigation into Jane Roe's Spring 2014 allegation, but denies the remaining allegations in Paragraph 181 of the Complaint.

182.     The University denies the allegations in Paragraph 182 of the Complaint.

183.     The University denies the allegations in Paragraph 183 of the Complaint.

## PRAYER FOR RELIEF

Plaintiff's "Prayer for Relief" does not require a response.  To the extent a response is deemed required, the University denies these statements.

## JURY DEMAND

Plaintiff's "Jury Demand" does not require a response.

## **GENERAL DENIAL**

The University denies any remaining allegation not specifically denied, and denies

that Plaintiff is entitled to any relief or recovery.

## **AFFIRMATIVE DEFENSES AND OTHER LIMITATIONS**

1.  Plaintiff's claims may be barred or reduced by a failure to mitigate his damages, if

any.

**DATED:** March 7, 2019.

Respectfully submitted:


*s/ Erica Weston*
Erica Weston
Associate University Counsel
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Erica.Weston@cu.edu
*Attorney for Defendants*


## **CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2019, I electronically filed the foregoing with the

Court's electronic filing system (CM/ECF) which will automatically cause notification to be

sent to the following counsel of record:

Andrew T. Miltenberg
Kara L. Gorycki
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, 5th Floor
New York, NY 10001
Phone:  212-736-4500
Email: amiltenberg@nmllplaw.com
Email: KGorycki@nmllplaw.com

Lara Marks Baker
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, CO 80209
Phone:  303-333-9810
Fax: 303-333-9786
Email: lmarks@fostergraham.com

*s/ Erica Weston*